# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1310015013A |
| | ) | |
| | ) | |
| STEVEN BAYNUM, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 2, 2018
Decided: April 16, 2018

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

Zoe Plerhoples, Deputy Attorney General and Cari Chapman, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorneys for the State of Delaware.

Christopher Koyste, Wilmington, Delaware, Attorney for Steven O. Baynum.

**MAYER,** Commissioner

This 16th day of April, 2018, upon consideration of Defendant's Motion for Postconviction Relief, the full briefing, the Evidentiary Hearing, closing arguments, and the record in this matter, the following is my Report and Recommendation.

## BACKGROUND AND PROCEDURAL HISTORY

On October 29, 2013, Steven Baynum, Defendant, was arrested and charged based on an incident that occurred a few days prior at the home of Defendant's ex-wife.[1] At the time, there was a no-contact order against the Defendant and he was not to be at their home. Despite this, he came to the home while Ms. Baynum, and a close friend (Dakota Holdren), were sleeping, and attacked them. The details of the evening were testified to at length by Ms. Baynum and Mr. Holdren but were at times unclear or confusing.[2] Briefly, amongst other things, the witnesses testified to Defendant punching Mr. Holdren many times and tying his hands together. Ms. Baynum and Mr. Holdren also testified they were in fear for their lives. The police responded to the residence at which point Mr. Baynum fled. He was later apprehended in Maryland and returned for trial.

The trial was conducted over four days beginning on October 28, 2014. At the conclusion of the trial, Defendant was found guilty of Burglary First Degree (as

---

[1] The facts set forth herein were taken from the Supreme Court's decision affirming the conviction. *See Baynum v. State*, 133 A.3d 963 (Del. 2016).

[2] The Supreme Court's appellate decision summarizes some of Ms. Baynum's inconsistent statements about the events in question.

a lesser included offense of Home Invasion), Burglary First Degree, two counts of Unlawful Imprisonment Second Degree (as the lesser included offense of Attempted Kidnapping First Degree), two counts of Menacing (as the lesser included offense of Aggravated Menacing), Assault Third Degree, Offensive Touching and Harassment. Defendant was found not guilty of Robbery First Degree, Robbery Second Degree and Possession of a Deadly Weapon During the Commission of a Felony.[3]

On March 20, 2015, relying on the Burglary First Degree charge, the Court granted the State's motion to declare Defendant a habitual offender,[4] and Defendant was sentenced that same date. As a habitual offender, Defendant received a total non-suspended sentence of 17 years imprisonment at Level 5.[5]

On April 8, 2015, Defendant appealed his conviction to the Delaware Supreme Court. The judgment of the Superior Court was affirmed on February 8, 2016.

---

[3] Although the witnesses testified Defendant brandished a knife and held a decorative sword, Defendant was not convicted of a weapons charge.

[4] *See* D.I. #s 52, 54. Defendant was declared a habitual offender pursuant to 11 Del. C. §4214(a) based upon previous convictions including Attempted Rape Fourth Degree in 2000, Assault Second Degree in 2004, and Failure to Register as a Sex Offender in 2008.

[5] The minimum mandatory sentence was 15 years and the State requested 25 years. Defendant also received 4 years and 3 months of Level 5 time for the other charges, suspended for decreasing levels of supervision.

Defendant filed a *pro se* motion for postconviction relief and for the appointment of counsel. Counsel was appointed and the Court issued a briefing schedule. The Amended Motion for Postconviction Relief was filed on February 13, 2017 (the "Motion"). The record was enlarged and after both trial and appellate counsel submitted affidavits in response, the State filed an opposition and Defendant filed a reply. An Evidentiary Hearing was held on September 21, 2017 at which time both trial and appellate counsel testified. Defendant and the State then submitted closing arguments to the Court and the record is now complete.[6]

## DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF

### I.    Overview of Claims

The Motion presents two arguments. Defendant fist argues he received ineffective assistance of counsel because Trial Counsel failed to pursue an instruction for Offensive Touching, as the lesser included offense of Assault Third Degree, in violation of his rights under Article I, Section 7 of the Delaware Constitution, and in violation of the Sixth and Fourteenth Amendments to the United States Constitution. At the conclusion of the State's case-in-chief, Trial Counsel moved for a judgment of acquittal on the charge of Assault Third Degree with respect to the alleged attack on Mr. Holdren on the basis that the evidence was insufficient to support the charge. After a colloquy with the Court, the motion was

---

[6]    *See* D.I. #s 83-85, 87, 90, 91, 97-101.

4

denied on the basis that there was more than sufficient evidence for the issue to go to the jury.[7] However, the Court recognized that "when we go through the jury instructions, it might be – a lesser-included offense of offensive touching might – might be considered."[8] Despite this, during the prayer conference and thereafter, Trial Counsel did not ask for an instruction on the lesser included offense of Offensive Touching. Defendant's Motion argues that (1) Trial Counsel erred in failing to request the lesser included offense instruction; and (2) if the jury had acquitted him of Assault Third Degree, then he likely would have been convicted of Burglary Second Degree (not First Degree) which carries a significantly lower minimum mandatory time.[9]

The second argument is based on Defendant's claim that Appellate Counsel was ineffective for having failed to raise an issue on appeal. During the trial, the State's counsel questioned the lead investigator and elicited Detective Burse's thoughts or opinion as to the guilt of the Defendant and he vouched for the complaining witnesses' version of the events (the "Opinion Testimony"). The Court overruled an objection from Trial Counsel, concluded trial for the day, and then addressed the matter again the following morning. The Court then denied Trial

---

[7] Trial Tr. Oct. 30, 2014 p. 68-71.

[8] Trial Tr. Oct. 30, 2014 p. 71.

[9] *See* D.I. # 97 at p. 3; 11 Del. C. §825 (a)(1).

5

Counsel's motion to dismiss or for a mistrial, agreed the questioning was improper and issued an instruction to the jury to disregard the testimony involving the officer's opinion. This issue was not raised on appeal.

## II. Response from Counsel

Defendant's former counsel have "fallen on their swords" and agree that they failed to submit these issues to the courts on his behalf. Mr. Flockerzie, as Trial Counsel, and Mr. Ceccotti, as Appellate Counsel, each separately submitted an Affidavit of Response and conceded that Mr. Baynum's allegations were correct in that Mr. Flockerzie did not request a jury instruction of Offensive Touching as a lesser included offense of Assault Third Degree; and Mr. Ceccotti did not raise on appeal the trial court's denial of the motion for a mistrial.[10] Further, both testified at the hearing that they essentially missed the issue or simply did not think about it at the time. Trial Counsel testified that it was not a strategic decision but rather, if he had remembered, he certainly would have requested the lesser included offense instruction because there was an argument as to whether the injury was sufficient for Assault Third Degree and this was a credibility case.[11] With respect to Appellate

---

[10] *See* Affidavit of Response of Ross A. Flockerzie Pursuant to Superior Court Criminal Rule 61(g)(2) [D.I. # 87] and Affidavit of Response of Santino Ceccotti Pursuant to Superior Court Criminal Rule 61(g)(2) [D.I. # 101].

[11] *See* Evidentiary Hearing Transcript of September 21, 2017, attached as Exhibit A to D.I. # 97, at pp. 15, 18-20, 26-27 (hereinafter "Evid. Hrg. Tr. at ___").

Counsel, he testified that although he reviewed the trial transcripts to identify potential legal arguments for appeal, he has no recollection of why he did not raise the issue at bar other than it simply wasn't considered.[12] According to Appellate Counsel, issues will be raised on appeal if they appear meritorious, could result in a positive outcome and have the highest probability of reversal.[13] Although he recognizes that jurors are presumed to follow their oath and instructions, he has raised issues on appeal when a curative instruction was given, but here, he did not consider the claim.[14]

## III. APPLICABLE LAW

The Court must first determine whether there are any procedural bars to the motion before considering the merits of the claims.[15] This is Defendant's first motion under Superior Court Criminal Rule 61 and it was timely filed.[16] The other

---

[12] Evid. Hrg. Tr. at pp. 36-38.

[13] Evid. Hrg. Tr. at p. 41.

[14] Evid. Hrg. Tr. at pp. 43-44. Appellate Counsel testified that he did not remember "even the issue crossing my mind" and he did not have any notes about the issue. *Id.* at 46.

[15] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[16] Defendant's first motion, having been filed within one year of the Supreme Court's Mandate on direct appeal, is timely. Super. Ct. Crim. R. 61(m)(2) and Super. Ct. Crim. R. 61(i)(1).

procedural bars likewise do not apply because ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[17] The fact that counsel did not raise an argument or objection during the trial, or on appeal, does not bar a defendant from alleging that counsel's failure amounted to ineffective assistance.[18] Defendant's Motion is not procedurally barred.

In order to prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's representation fell below an objective standard of reasonableness **and** the deficiencies in counsel's representation caused the defendant actual prejudice.[19] When reviewing such a claim, the Court must analyze counsel's conduct based upon all of the facts of the case and avoid peering through the lens of hindsight.[20] Defendant must show that any alleged errors were so serious that his counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

---

[17] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Ct. Aug. 25, 2016).

[18] *See Malloy v. State*, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011); *Brodie v. State*, 2011 WL 927673, at *1 (Del. Super. Ct. Mar. 17, 2011); *State v. Ross*, 2004 WL 2735515, at *2 (Del. Super. Ct. Nov. 22, 2004).

[19] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[20] *State v. Wright*, 653 A.2d 288, 295 (Del. Super. Ct. 1994).

Amendment.[21]    "A defense attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[22]    Great weight and deference are given to tactical decisions by the trial attorney and counsel cannot be deemed ineffective for failing to pursue motions that lack merit.[23]    Further, in order to prevail on an ineffective assistance of counsel claim, a defendant must show that but for the errors, there is a reasonable probability that the outcome of the proceedings would have been different.[24]    In doing so, Defendant must overcome a strong presumption that counsel's conduct was reasonably professional under the circumstances.[25]    However, where the record establishes that counsel's decision was not a strategic choice, then counsel is not entitled to the presumption of deference set forth in *Strickland*.[26]

---

[21]  *State v. Finn*, 2012 WL 1980566, at *4 (Del. Super. Ct. May 23, 2012).

[22]  *Id.*, at *4 (holding defense counsel provided active and capable advocacy when evidence against Defendant was overwhelming) (citing *Harrington v. Richter*, 131 S. Ct. 770, 787-792 (2011)).

[23]  *State v. Miller*, 2013 WL 871320, at *4 (Del. Super. Ct. Feb. 26, 2013).

[24]  *Strickland*, 466 U.S. at 687-88, 694; *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[25]  *State v. Wright*, 653 A.2d at 293-94 (citations omitted).

[26]  *Breakiron v. Horn*, 642 F.3d 126, 138 (3d Cir. 2011), citing *Strickland*, and *Thomas v. Varner*, 428 F.3d 491, 499-500 (3d Cir. 2005).

Therefore, Defendant's motion should be granted if (i) Trial Counsel's failure to argue for a lesser included instruction or Appellate Counsel's failure to raise the Opinion Testimony on appeal, fell below an objective standard of reasonableness **and** (ii) counsel's actions were so prejudicial that it is reasonably probable that the outcome would have been different.

## IV.    THE LESSER INCLUDED OFFENSE INSTRUCTION

"The prosecution or the defense is entitled to a lesser included offense instruction if the crime not charged is in fact a lesser-included offense, and if there is a rational basis in the evidence to convict the defendant of the lesser crime rather than the greater."[27]  An offense is so included when "it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged."[28]

To obtain a conviction of Assault Third Degree, the State must prove that the defendant intentionally or recklessly caused physical injury to another.[29]  Physical

---

[27] *Miller v. State*, 893 A.2d 937, 948 (Del. 2006) (internal citations omitted); *Dickens v. State*, 2010 WL 2889501, at *2 (Del. July 23, 2010).

[28] Del. Code. Ann. Titl. 11, § 206(b)(1) 2015.  *See also* Del. Super. Ct. Crim. R. 31(c) ("Conviction of Included Offense.  The defendant may be found guilty of an offense included in the offense charged in accordance with 11 Del. C. § 206"); *Ward v. State*, 575 A.2d 1156, 1158 (Del. 1990) ("A defendant may be convicted of a crime for which he has not been indicted if all of the elements of that crime are included in the definition of the crime with which he has been charged.").

[29] 11 Del. C. §611.

injury is defined as an impairment of physical condition or substantial pain.[30] In comparison, the charge of Offensive Touching requires evidence that the defendant intentionally touched another person knowing that the defendant is likely to cause offense or alarm to that person.[31] Based on the facts and circumstances of this case, the parties do not dispute that if requested, Defendant would have been entitled to an instruction of Offensive Touching.

Defendant was convicted of Burglary First Degree pursuant to 11 Del. C. §826, which, amongst other things, required the jury to find beyond a reasonable doubt that Defendant was either "armed with explosives or a deadly weapon" or caused "physical injury to any person who is not a participant in the crime." In the present case, there was no evidence of explosives, the jury found Defendant not guilty of Possession of a Deadly Weapon During Commission of a Felony, and the jury found Defendant guilty of Offensive Touching (not Assault Third) with respect to Ms. Baynum. Therefore, the only logical conclusion is that the jury convicted of Burglary First because they found there was "physical injury" to Holdren. Defendant now argues though that if the jury had the opportunity to convict of Offensive Touching with respect to Holdren then the jury would have acquitted of

---

[30]  *See* 11 Del. C. §222.

[31]  11 Del. C. § 601.

11

Burglary First Degree, consistently finding that there was insufficient evidence to establish "physical injury" to another. In the alternative, if the jury had convicted of Offensive Touching and Burglary First Degree, the Court would have been required to reduce the charge to Burglary Second Degree on the basis that the jury acquitted Defendant of a necessary element of Burglary First Degree when it found Defendant not guilty of Assault Third Degree.

The State contends defense counsel's strategy was to argue Defendant was not present at the house the night of the incident, which story, if believed, is inconsistent with a strategy of requesting a lesser included offense of Offensive Touching. However, Trial Counsel admitted that his failure to request the lesser included offense was not strategic but rather, he forgot to submit the request. Contrary to the State's position, requesting the lesser included offense would have been wholly consistent with the defense strategy of requesting a lesser included instruction when applicable and in fact not only did Trial Counsel request a lesser included instruction for several charges, but the jury convicted Defendant of the lesser charge in three instances. Further, the issue of Holdren's injury was raised early in the trial process,[32] the Court acknowledged an instruction may be

[32] Trial Counsel moved for a judgment of acquittal as to Assault Third Degree and argued the alleged injury was insufficient to satisfy the elements of the statute. *See* Trial Tr. Oct. 30, 2014 pp. 68-71.

appropriate, and defense counsel's strategy throughout the trial, and in closing, was to not only argue Defendant was not culpable, but to also attack the evidence supporting the alleged injury to Holdren. And, Trial Counsel testified that he did ask for lesser included offense instructions on other offenses that were charged because his strategy was "in the hopes of if they were going to convict, that they would convict for a lesser reduced offense" and that he simply did not think of asking for the Offensive Touching charge when the time came.[33] In fact, the record demonstrates that the charge of Burglary Second Degree was offered as both a lesser included offense of Home Invasion and Burglary First Degree.

This case is not dissimilar to *Weber v. State*, 971 A.2d 135 (Del. 2009). In *Weber*, the defendant denied any involvement in the charged offense, but the Supreme Court held that the lesser included offense test should still have been applied. In granting a reversal, the Supreme Court further opined that the trial judge only instructed on the highest offense and a reasonable jury could have convicted defendant of the lesser offense. In Baynum's case, the parties agree that the lesser

---

[33] Evid. Hrg. Tr. at pp. 29-30, 31-32. Trial Counsel also acknowledged at the hearing that he argued in closing that Holdren was not injured, that there was no blood on the sheets, and it is possible the events did not happen as set forth by the witnesses. *Id.* at pp. 32-33.

13

included offense of Offensive Touching was appropriate based upon the evidence presented and could have been presented to the jury if requested.[34]

I also agree with Defendant's concern that although a jury abides by its duties, some courts have recognized "'a substantial risk that the jury's practice will diverge from theory' when it is not presented with the option of convicting of a lesser offense instead of acquitting outright."[35] The substantial risk in this case was that the jury may have elected to convict Baynum of Assault Third Degree, despite one element of the charge unproven, rather than acquit him entirely where they felt some criminal conduct occurred.

Defense counsel not only bears the burden of requesting an instruction, but the decision to waive a lesser included offense instruction requires "an in-depth

---

[34] State's Response at D.I. # 90, p. 7. The courts have consistently held that Delaware is a "party autonomy jurisdiction;" meaning the trial court will not interfere in the litigation strategy of the parties and must withhold charging on a particular lesser-included offense unless requested by a party. *State v. Coverdale*, 2018 WL 259775, at *3-4 (Del. Super. Ct. Jan. 2, 2018), citing *Chao v. State*, 604 A.2d 1351, 1358 n. 4 (Del. 1992) (citing *Walker v. United States*, 418 F.2d 1116, 1119 (D.C. Cir. 1969) and *Hagans v. State*, 559 A.2d 792, 804 (Md. 1989)).

[35] *Breakiron v. Horn*, 642 F.3d 126, 138-139 (3d Cir. 2011), citing *Beck v. Alabama*, 447 U.S. 625, 634 (1980), and quoting *Keeble v. United States*, 412 U.S. 205, 212-13 (1973) ("[A] defendant is entitled to a lesser offense instruction in this context or any other – precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from the theory. Where one of the elements of the offenses charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.").

discussion of the trial evidence and defense tactics between counsel and client."[36] In this case, Trial Counsel testified he simply missed it when the time came to instruct the jury. Mere oversight by trial counsel will amount to deficient performance and counsel who forgets to request an instruction that could help his client fails to meet an objective standard of reasonableness.[37] Although the State argues that Baynum's defense strategy precluded the lesser included offense instruction, the Supreme Court has held that a defendant's exculpatory testimony cannot be the sole basis for precluding the instruction.[38] Therefore, I find that Trial Counsel's failure to request the lesser included offense of Offensive Touching was in error and not objectively reasonable.

Relief can only be afforded though if this error was so prejudicial that there is a reasonable probability that the outcome of the proceedings would have been different. It is not possible for the courts to delve into the minds of the jurors as to

---

[36] *State v. Coverdale*, 2018 WL 259775, at *11.

[37] *Neal v. State*, 80 A.3d 935, 945 (Del. 2013) (citing *Brooks v. State*, 40 A.3d 364, 354 (Del. 2012).

[38] *Capano v. State*, 781 A.2d 556, 629 (Del. 2001), citing *Miller v. State*, 426 A.2d 842 (Del. 1981) (holding defendant's exculpatory defense did not preclude a charge on arson in the second degree), *Webb v. State*, 663 A.2d 452, 462 (Del. 1995) (finding the standard applies even when the defendant denies any involvement in the charged offense).

what they would or would not have done. However, there are several factors here that should be considered.

Detective Vincenzo testified that he did not collect the bed sheets as he felt they were not related to the investigation and had he seen something (such as blood), he would have collected them.[39] Although Holdren testified he was hit 20-30 times in the head, he "guessed" about seeing blood, but also said he was bleeding from the nose.[40] Officer Fitzpatrick testified he did not initially observe any injuries to Holdren but later observed a swollen lip.[41] Ms. Baynum told the officer that Holdren was not injured but she also testified that she saw blood.[42] Detective Burse did testify that Holdren "appeared to have a swollen upper lip" but he did not recall other injuries.[43] Pictures of the injuries to Holdren were presented to the jury as Exhibit 22.[44] In addition, Enola Teeter, Defendant's grandmother, testified that Defendant

---

[39] Trial Tr. Oct. 30, 2014 pp. 47-48.

[40] Trial Tr. Oct. 29, 2014 pp. 134-136.

[41] Trial Tr. Oct. 28, 2014 pp.145, 164.

[42] Trial Tr. Oct. 28, 2014 pp. 164-166, 217-218.

[43] Trial Tr. Oct. 29, 2014 pp. 209-212.

[44] Trial Tr. Oct. 29, 2014 pp. 210-212 and Exhibit 22 (identified as "Dakota Holdren lip injury").

admitted to her that he "beat" a man believed to be Holdren.[45] In denying the motion for acquittal on the Assault Third Degree charge, the Court held that the swollen lip, as well as pain testimony, could be "impairment" but also stated that the lesser included offense of Offensive Touching could be considered.[46] The jury's verdict demonstrates that the jurors believed some of the witnesses' testimony and rejected some of their claims.[47] In addition, the jury did not hesitate in convicting of a lesser included offense where they believed it was appropriate.

Since the jury's verdict was predominantly dependent on credibility of the witnesses and conflicting testimony, Defendant argues that if given the opportunity, the jury could have convicted him of Offensive Touching and not Assault Third Degree. If that had happened, the logical corollary is that the Defendant would have been convicted of Burglary Second, not Burglary First, because both Assault Third and Burglary First have the same statutory definition of physical injury. Defendant next argues that since the State sought a habitual offender sentence based on the Burglary First conviction, the outcome of the case would have been different if Defendant had been convicted of Burglary Second instead. A Burglary Second

---

[45] Trial Tr. Oct. 29, 2014 pp. 104-105.

[46] Trial Tr. Oct. 30, 2014 pp. 68-71.

[47] For example, the jury did not believe Ms. Baynum and Mr. Holdren's testimony regarding the alleged sword that was used by the Defendant and found him not guilty of the Possession of a Deadly Weapon charge.

17

conviction could still have made Defendant eligible for habitual offender sentencing, but the minimum mandatory would have been reduced from 15 years to 8 years and the sentencing would have been discretionary.[48] The State argues that there is no basis to think the Court would not have imposed the same penalty regardless of whether the conviction was Burglary First or Second.

Although Defendant has established error by counsel, Defendant has not met his burden of demonstrating actual prejudice. Defendant's proposition is too tenuous. The test is not whether the Defendant can demonstrate that the error had some "conceivable effect" on the outcome but rather whether the error undermined the reliability of the result of the proceeding.[49] Defendant must show that there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.[50] Defendant does not dispute that there was sufficient evidence for the jury to convict of Assault Third Degree. The Court is being asked to assume that it was probable that not only could the jury have convicted Defendant of Assault Third, but it would have weighed the evidence and elected to convict of Offensive Touching, instead. In light of the jury's conviction of Burglary First – as a lesser included offense of Home Invasion, and after having

---

[48] *See* 11 Del. C. §4214, *et. seq.* and 11 Del. C. Sections 825, 826.

[49] *Strickland*, 466 U.S. at 693.

[50] *Id.* at 695.

18

been offered Burglary Second Degree – this reasoning is not persuasive.[51]  In order for Defendant to prevail though, he must take it one step further and establish a sufficient reasonable probability that but for counsel's error, the sentencing judge would have been "swayed" to decide Defendant's sentence differently.[52]  This is where Defendant's argument fails.

I have reviewed the information provided to the Court prior to sentencing as well as the transcript from the Sentencing Hearing and do not find it reasonably probable that the Court would have imposed a lesser sentence under the circumstances.  Prior to and at sentencing, the Court was aware of Defendant's previous convictions, read the psycho-forensic evaluation, and reviewed the letter submitted by the State.[53]  The judge examined the mitigating factors with respect to the attempted rape charge and indicated he was "very familiar" with the case having reviewed these submissions and after having presided over the trial.  The Court also

---

[51]  *Cf White v. State*, 173 A.3d 78 (Del. Oct. 17, 2017) (reversing decision denying postconviction relief because defendant demonstrated prejudice by showing that there was a reasonable probability that had the jury received a lesser included offense instruction, the defendant would have been convicted of a misdemeanor instead of a felony).

[52]  *Harden v. State*, 2018 WL 716854, at *15 (Del. Feb. 6, 2018), *re'hrg en banc* denied Mar. 1, 2018, *quoting Taylor v. State*, 32 A.3d 374, 386 (Del. 2011).  The dissent in *Harden* (at p. 3) also recognized that the sentencing judge was in "the best position to know whether it was reasonably probable that [he] would have given [defendant] a different sentence."

[53]  Sentencing Tr. at p. 14.

considered the State's argument that this case was "part of the pattern of continuing and escalating domestic abuse by the defendant," that Defendant accepted no responsibility and showed no remorse for his actions, but also accepted the State's concession that Defendant had a "horrific childhood."[54] The Court listened to defense counsel's unique legal argument that the Assault Third charge should merge into the Burglary First conviction and provided an opportunity for Defendant to argue it further.[55] Defense counsel presented an impassioned plea for leniency followed by Defendant's colloquy with the Court. The hearing concluded with the victims' statements.

In issuing his decision, the judge acknowledged Defendant's prior violent conduct, habitual offender status, repetitive criminal conduct, need for correctional treatment – especially mental health, undue depreciation of offense and lack of remorse.[56] The sentencing judge also commented that he watched Defendant "sit on the stand, and take an oath, and testify in a way that just defies logic that wasn't even there" and after providing an example states the jury "did the right thing."[57] Despite the State's request for 25 years, the Court sentenced Defendant to 17 years and

---

[54] Sentencing Tr. at pp. 16-19.

[55] Sentencing Tr. at pp. 23-27.

[56] Sentencing Tr. at pp. 39-40.

[57] Sentencing Tr. at p. 40.

specifically stated in doing so that "[o]ne of the things that, again, I try to balance is if he weren't declared an habitual offender, I could sentence him to lots of back time so that if he were to try and contact Ms. Baynum and the like."[58] The Court's decision making was thorough, detailed, and considered. Based on this record, I do not find that it is reasonably probable that Defendant would have been sentenced to less than 17 years, nor that the outcome of this matter would have been different if the jury had convicted of the lesser included offenses as proposed by Defendant.

## V. THE OPINION TESTIMONY

As part of its case in chief, the State called Detective Burse to testify at which time he summarized the investigation and facts believed to support the charges. The following cross-examination by defense counsel then occurred:

> Q. Detective, do you recall testifying in a pretrial hearing in this case?
> A. I do.
> Q. Do you remember during the hearing you told me that anything is possible?
> A. Yes.
> Q. Isn't it possible that this didn't happen the way Manisha and Dakota said it happened?
> A. Anything is possible.
> Q. Isn't it possible that, in fact, this alleged activity did not happen?
> A. Which activity specifically are you referring to?
> Q. This incident. Isn't it possible that this alleged incident did not occur?
> A. In my opinion?

---

[58] Sentencing Tr. at p. 44.

Q.     I'm asking – what I'm saying is, is it possible that this incident didn't occur?
A.     Anything is possible.
Mr. Flockerzie:  Thank you, no further questions.[59]

The State then immediately advanced with re-direct examination as follows:

Q.     Detective Burse, you said anything is possible?
A.     Yes.
Q.     Is it possible that Mr. Flockerzie was actually the suspect in this case?
A.     Anything is possible.
Q.     Right.  Does the evidence in this case and your investigation suggest that this incident happened as Manisha Baynum and Dakota Holdren said it did?
A.     Yes.[60]

The State then proceeded to explore other topics but returned to this line of questioning before concluding re-direct by asking:

Q.     And, I guess, Detective, the last question I have for you is, what is your opinion on the possibility of the defendant, Steven Baynum, having committed these acts?
A.     That he did it.[61]

Mr. Flockerzie then promptly requested a sidebar conference and objected to the last question and answer because it "directly called for the officer to, essentially, cast his

---

[59] Trial Tr. Oct. 29, 2014 pp. 233-234 at D.I. # 62.

[60] Trial Tr. Oct. 29, 2014 p. 234.

[61] Trial Tr. Oct. 29, 2014 p. 238.

vote as to whether my client is guilty or not guilty and that's not his role here."[62] The State argued that the defense had "open[ed] the door." The objection was overruled and the sidebar conference concluded.[63] Due to the late hour, the Court elected not to start another witness but to finish for the day. However, after some discussion, the Court noted "I am going to think about the issue overnight, the last objection, but I – I'm not saying that I'm going to – I just want to look at one thing that I just thought about, but if we have to, that will – he'll still be available for cross-examination."[64]

When trial resumed the following morning, Mr. Flockerzie again raised the issue of the detective's testimony. Mr. Flockerzie had conferred with the State and they were in agreement that the question was not appropriate.[65] The concern was the remedy as "[t]he officer opined as to [Defendant's] guilt and it was the last question the jury heard. It is something that the jurors individually have been able to think about overnight into this morning and it was inappropriate."[66] Mr.

---

[62] Trial Tr. Oct. 29, 2014 pp. 238-239.

[63] Trial Tr. Oct. 29, 2014 p. 239.

[64] *See* Trial Tr. Oct. 29, 2014 pp. 240-242.

[65] Trial Tr. Oct. 30, 2014 pp. 4-5 at D.I. # 63.

[66] Trial Tr. Oct. 30, 2014 p. 5.

Flockerzie then requested dismissal of the case, or in the alternative, to declare a mistrial, arguing a curative instruction was insufficient because "[t]he officer has opined as to the ultimate issue. The jury cannot unhear that and there is some pressure that they would need to convict because a police officer, who did all this investigation is the chief investigating officer, believes my client is guilty, therefore, he must be."[67]

The State's counsel repeatedly conceded that the last question "crossed the line a bit" but was a reaction to what she perceived as improper questioning from the defense. Despite this, the State argued that a mistrial would be an extraordinary remedy for what was considered a "small issue," the case did not "turn on his testimony," and that a curative instruction that the offending question/answer would be stricken was the proper remedy.[68]

The Court held that both lines of questioning asked for an opinion and that the remedy would be to instruct the jury that Detective Burse's opinion about possibilities and probabilities is irrelevant and should be disregarded.[69] The Court specifically noted that "[t]his is the first opportunity to address this. It could have

---

[67] Trial Tr. Oct. 30, 2014 pp. 5-6.

[68] Trial Tr. Oct. 30, 2014 pp. 6-8.

[69] Trial Tr. Oct. 30, 2014 pp. 10-12.

24

been addressed last night, but there wasn't a limiting instruction offered at that point, nor was there a request for a mistrial at that point. There was an objection to the testimony."[70] Soon after the jury was brought in, the Court issued a lengthy instruction that the jury was to disregard the officer's testimony, that his opinion as to the guilt or innocence of Mr. Baynum is irrelevant and the jury was not to consider either part of the testimony.[71] When it was time for jury deliberations to commence, another instruction was provided to the jury.[72]

The question for this Court is whether appellate counsel's failure to raise the issue of the Opinion Testimony and the denial of the motion for dismissal/mistrial, on appeal, was ineffective assistance of counsel. Delaware law is clear that a witness may not vouch for the credibility of another witness, and improper vouching includes testimony that either directly or indirectly provides an opinion on the veracity of a particular witness.[73] However, it is also well settled that a prompt curative jury instruction will alleviate any prejudice to the defendant because the jury is presumed to follow the instructions. Whether that limiting instruction is sufficient depends on "(1) the effectiveness of the limiting instruction; (2) the extent

---

[70] Trial Tr. Oct. 30, 2014 p. 12.

[71] Trial Tr. Oct. 30, 2014 pp. 17-19.

[72] Trial Tr. Oct. 31, 2014 pp. 155-157 at D.I. # 65.

[73] *Capano v. State*, 781 A.2d 556, 595 (Del. 2001) (internal citations omitted).

to which the State's case depends on the witness' testimony; and (3) the extent to which the credibility of the witness is in dispute."[74] The Supreme Court has recognized that an instruction will be deemed sufficient to alleviate prejudice to the defendant unless the prejudice is egregious.[75]

Appellate counsel need not raise every claim on appeal but can select from among the possible claims in order to maximize the likelihood of success.[76] To establish ineffective assistance of appellate counsel, Defendant must show that the omitted nonfriviolous issue was clearly stronger than the issues counsel presented.[77] Appellate Counsel only raised one issue on appeal and would not have been constrained to raise the Opinion Testimony as a second issue. Defendant argues the

---

[74] *Capano v. State*, 781 A.2d at 588-589, 597 (internal citations omitted) (also holding that the Court must determine whether the evidence, exclusive of the improper testimony, was sufficient to sustain the conviction).

[75] *Barnard v. State*, 2005 WL 1950191, at *2 (Del. July 22, 2005) (finding trial judge's "prompt" sustaining of objection and "immediate" curative instruction to have addressed any prejudice to defendant). *See also Hassan-El v. State*, 911 A.2d 385, 398 (Del. 2006) (finding a limiting or curative instruction can be a sufficient remedy depending on the strength of the State's case); *Armstrong v. State*, 1990 WL 72572, at *2 (Del. May 3, 1990) (police officer made improper statement that was deemed cured by trial court's immediate instruction to the jury and because it is presumed that the jury obeyed the instruction).

[76] *Neal v. State*, 80 A.3d at 946, *quoting Smith v. Robbins*, 528 U.S. 259, 288 (2000).

[77] *Id.*

issue that was raised on appeal – the *Lolly* instruction[78] - had already been addressed by the Delaware Supreme Court and Trial Counsel's cross-examination of the witnesses regarding the unrecorded time made this issue less likely to be successful on appeal. Thus, there was a second non-frivilous issue, *i.e.* the Opinion Testimony/mistrial, that was stronger and the Supreme Court has found reversible error as a result of prosecutorial misconduct[79] that could not be remedied by a curative instruction.

I find that Appellate Counsel erred in not raising this issue on appeal, however, Defendant failed to demonstrate how the outcome of the appeal would have been different had the argument been raised or sufficient prejudice to warrant relief.[80] In this case, (i) the State solicited the opinion of the Chief Investigating Officer on

---

[78] Defendant argued on appeal that the police failed to collect and preserve an inconsistent statement from Ms. Baynum and the trial court erred in denying his request for a *Lolly* instruction. *See Lolly v. State*, 611 A.2d 956 (Del. 1992).

[79] Not only did the prosecutor improperly solicit the detective's opinion on ultimate guilt but the questioning vouched for the truthfulness of Ms. Baynum and Holdren's testimony. A police officer's personal belief in the credibility of the witnesses' statements is not admissible evidence. *See Holtzman v. State*, 1998 WL 666722, at *4 (Del. July 27, 1998) (State should not have introduced officer's opinion of claimant's testimony); *Quirico v. State*, 2004 WL 220328, *4 (Del. Jan. 27, 2004) (citing *Saunders v. State*, 602 A.2d 623, 624 (Del. 1984) (recognizing "improper vouching" when "prosecutor implies that he or she has superior knowledge, beyond that logically inferable from the evidence, that a witness has testified truthfully.").

[80] *See Stone v. State*, 690 A.2d 924, 925-926 (Del. 1996) (reviewing standard for ineffective assistance of appellate counsel claims).

ultimate guilt and who inherently vouched for the credibility of the complaining witnesses,[81] (ii) there was conflicting testimony and the credibility of the witnesses was placed at issue; and (iii) the jury believed some but not all of the testimony as evidenced by the fact that the jury did convict of some lesser included offenses and acquitted on some charges. Moreover, the State admitted at trial that the questioning "crossed the line" and conceded error. Appellate Counsel testified that there was no strategic purpose in failing to raise the issue on appeal.

After reviewing these factors, I find that Defendant could have challenged the State's actions on appeal on the basis of prosecutorial misconduct. The Supreme Court reviews questions of law and constitutional claims *de novo*.[82] In the context of prosecutorial misconduct claims, where defense counsel timely objects, the Supreme Court will review for "harmless error."[83] The harmless error analysis includes (1) *de novo* review of the record as to whether prosecutorial misconduct occurred; and (2) a determination of whether the conduct prejudicially affected the

---

[81] To the extent the State argues that the defense opened the door for this line of questioning, Delaware has recognized the "invited response" or "invited reply" rule that two improper arguments or wrongs, "do not make for a right result." *Brokenbrough v. State*, 522 A.2d 851, 858 (1987), *citing Lawn v. United States*, 355 U.S. 339 (1985), and *quoting United States v. Young*, 470 U.S. 1 (1958).

[82] *Zebroski v. State*, 12 A.3d 1115, 1119 (Del. 2010).

[83] *Baker v. State*, 906 A.2d 139, 148 (Del. 2006).

defendant's substantial rights warranting reversal.[84]  In making this determination, the court applies the *Hughes* three factor test.[85]  The test requires the Court to review the closeness of the case, centrality of the issue, and steps taken to mitigate the prejudice to the defendant.[86]  If after applying this test, the court concludes that consideration of these factors does not weigh in favor of reversal, the court can then apply the *Hunter*[87] test and consider whether the prosecutor's statements or misconduct are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process.[88]

Assuming this case was close and the Opinion Testimony was central to the issues in the case, the Court must then inquire whether the instructions to the jury – given the next day, as well as at the conclusion of the case - was sufficient to mitigate any prejudice or cure any misconduct.  The trial court denied the mistrial application and found the instructions appropriate.  A trial judge's ruling on a mistrial application will only be reversed if it is based on unreasonable or capricious

---

[84]  *Id.* at 148-149.

[85]  *Id.*

[86]  *See Hughes v. State*, 437 A.2d 559, 571, quoting *Dyson v. United States*, 418 A.2d 127, 132 (D.C. 1980); *Flonnory v. State*, 893 A.2d 507, 538 (Del. 2006).

[87]  *See Hunter v. State*, 815 A.2d 730 (Del. 2002).

[88]  *Baker v. State*, 906 A.2d at 149, citing *Hunter*, 815 A.2d at 732.

grounds.[89] Since juries are presumed to follow the trial judge's instructions, a prompt curative instruction is presumed to cure error if adequately directed to disregard any improper statements.[90]

When faced with prosecutorial misconduct, a close case, little or no physical evidence, and credibility determinations, the Supreme Court has made it clear that the lack of a curative instruction is clearly prejudicial and reversal is appropriate to avoid manifest injustice.[91] Here, the instruction was given the very next morning after the jury reconvened. Defendant argues that the prejudicial testimony having been given the night before, and being the last thing the jury heard before the overnight recess, could not be cured by an instruction the next day. Defendant points the Court to *Michaels v. State*, 970 A.2d 223, 229 (Del. 2009), where the court found that the defendant was required to demonstrate how the passage of time unfairly prejudiced him in the eyes of the jury when the instruction itself was properly designed to cure any prejudice. Recognizing that the temporal constraints of the trial schedule alone cannot give rise to a claim of unfair prejudice, the court went on to

---

[89] *Revel v. State*, 956 A.2d 23, 27 (Del. 2008), citing *Zimmerman v. State*, 628 A.2d 62, 65 (Del. 1993); *Chavin v. Cope*, 243 A.2d 694, 699 (Del. 1968); *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954).

[90] *Revel v. State*, 956 A.2d at 27 (internal citations omitted).

[91] *Baker v. State*, 906 A.2d at 153-154; *McCoy v. State*, 112 A.3d 239, 260-261 (Del. 2015); *Brokenbrough v. State*, 522 A.2d 851 (Del. 1987).

hold that a weekend recess or two-day delay did not render the trial judge's curative instruction inadequate.[92]

I find that it is more likely than not that the instruction cured any prejudice resulting from the officer's testimony. Notably, the jury returned a verdict of not guilty on three offenses and convicted Defendant of several lesser included offenses. If the jury were to have accepted the officer's opinion in whole, then they would have simply convicted Defendant of each charge as originally asserted by the State. However, the jury's mixed verdict in this case shows that the jury did not accept the testimony and the State's arguments as a whole.[93] Turning now to the issue presently before the Court, the logical conclusion is that although Appellate Counsel erred in not raising the issue on appeal, the error was not so prejudicial as to likely affect the

---

[92] *Michaels v. State*, 970 A.2d at 229-230, citing *Garvey v. State*, 873 A.2d 291, 300 (Del. 2005) (holding that where trial judge recessed for day immediately following improper statement, and then issued curative instruction later the next day, delay was not so "significant" to render that instruction ineffective in curing prejudice to the defendant). I disagree with Defendant that *United States v. Gullo*, 502 F.2d 759, 762 (1974) is directly on point. The court in that matter relied not only on the delay but also the prosecution's failure to call a witness as promised which pressured the defense to produce an unwanted and questionably credible witness. It was the combination of circumstances that made the trial "unsatisfactory."

[93] *See e.g., Armstrong v. State*, 1990 WL 72572, at *2 (Del. May 3, 1990) (jury returned not guilty verdict on two offenses showing they considered each charge separately and not impermissibly influenced by matters they were directed to disregard).

outcome of the case. Although this issue should have been raised on appeal, when balanced with the mixed verdict, I conclude that there was a substantial likelihood that the Supreme Court would have found that the very brief delay was not so prejudicial to affect the outcome of the proceedings.

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

Commissioner Katharine L. Mayer